UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIT FRIAS,<br><br>                    Plaintiff,<br><br>     v.<br><br>DENDREON CORPORATION, et al.,<br><br>                    Defendants. | CASE NO. C11-1291JLR<br><br>ORDER ON MOTIONS FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| DAVID EMS,<br><br>                    Plaintiff,<br>     v.<br><br>DENDREON CORPORATION, et al.,<br><br>                    Defendants.<br><br>*Captions continued on the next page* | CASE NO. C11-1294JLR |

ORDER- 1

| | |
|---|---|
| MICHAEL F. WENDT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DENDREON CORPORATION, et al.,<br><br>　　　　Defendants. | CASE NO. C11-1568JLR |

## I. INTRODUCTION

Before the court are two motions for appointment of lead plaintiff and approval of lead counsel in the above captioned matters: (1) the motion of San Mateo County Employees Retirement Association ("SamCERA") (Dkt. # 13), and (2) the motion of Dendreon Investor Group ("the Frankel Investor Group") (Dkt. # 18). Several other putative lead plaintiffs also moved for appointment, however, the court denied those motions during the December 14, 2011 hearing because none of the other putative lead plaintiffs were able to demonstrate that they had a financial interest in the relief sought by the putative class that was greater than either SamCERA or the Frankel Investor Group. (*See* Dec. 14, 2011 Min. Entry (Dkt. # 49).) Having reviewed the motions of the parties and all papers filed in support and opposition thereto, having heard the oral argument of counsel on December 14, 2011, and being fully advised, the court GRANTS SamCERA's motion for appointment as lead counsel and approval of lead counsel (Dkt. # 13), and DENIES the Frankel Investor Group's motion (Dkt. # 18).

ORDER- 2

## II. PRELIMINARY MATTERS

At the December 14, 2011 hearing, the court also granted the pending motions for consolidation of the above captioned matters. (*See* Dec. 14, 2011 Min. Entry.) From now on, every pleading in these consolidated matters shall bear the following caption:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| In re: DENDREON CORPORATION CLASS ACTION LITIGATION | MASTER DOCKET NO. C11-1291JLR (consolidated with Nos. C11-1294JLR and C11-1568JLR) |
|---|---|
| This Document Relates To: | |

When a pleading or other court paper filed in the consolidated action is intended to apply to all actions, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the above caption. When a pleading or other paper is intended to apply to only one or some, but not all of the consolidated actions, the party filing the document shall indicate the action(s) to which the document applies by last name of the named plaintiff(s) and the docket number(s). The files of these consolidated actions shall be maintained in one file under the Master Docket No. C11-1291JLR. All counsel who have been granted *pro hac vice* admission in any one of these consolidated actions shall be deemed to be admitted *prohac vice*, without further filings, in Master Docket No. C11-1291JLR.

ORDER- 3

## III. FACTUAL AND PROCEDURAL BACKGROUND

As discussed above, there are three putative shareholder class action cases (Nos. C11-1291JLR, C11-1294JLR, and C11-1568JLR) concerning the Dendreon Corporation, which are presently pending in the Western District of Washington, and which have previously been consolidated by the court. Dendreon is a biotechnology company that engages in the discovery, development, and commercialization of therapeutics to enhance cancer treatment or therapy. One of Dendreon's products is Provenge, which is a cancer treatment. The three cases involve allegations that Dendreon's board of directors and/or Dendreon touted (in public filings, press releases, and/or communications with analysts) Dendreon's sales and business prospects with respect to Provenge without a reasonable basis to do so.

Pending before the court were several motions which all put forward competing entities for lead plaintiff and lead counsel. Because all but two of the entities have either filed no response to the motions of other putative lead plaintiffs or have admitted that they do not have losses which exceed either the Frankel Investor Group or SamCERA (*see* Dkt. ## 31, 32), the Frankel Investor Group and SamCERA are the only entities which are presently in the running for lead plaintiff. (*See* SamCERA Mot. (Dkt. # 13); Frankel Mot. (Dkt. # 18).) Although there are disputes concerning how the two groups have calculated their financial interest in the litigation,[1] SamCERA is claiming losses of

---

[1] SamCERA complains that the Frankel Investor Group improperly included losses sustained on options trades, which it asserts are not at issue in the action. (SamCERA Mem. (Dkt. # 33) at 6, n. 6.) The Frankel Investor Group asserts that SamCERA's losses are

ORDER- 4

between $1,895,393.73[2] - $1,963,933.07,[3] and the Frankel Investor Group is claiming losses, collectively, of between $2,582,766.13 - $2,763,952.57 (depending on how the class period is calculated).[4]

The Frankel Investor Group consists of seven individuals (three individuals and two married couples) who were introduced to one another through their counsel "at their request." (Supp. Berman Decl. (Dkt. # 36) Ex. A (Joint Decl. of Investor Group) ¶ 2.) Except for the spouses in the two married couples, there is no indication of the existence of any pre-litigation relationship between any of the members of the Frankel Investor Group, and counsel for the Frankel Investor Group admitted this at oral argument. The members of the Frankel Investor Group, nonetheless, describes themselves as a "small, cohesive group" who "intend to work closely and cooperatively . . . to oversee the litigation." (*Id.* ¶ 3.) Interestingly, they have agreed that where unanimity of decision-

---

erroneously inflated because it failed to account for gains from class period sales of securities purchased prior to the class period. (Frankel Mem. (Dkt. # 35) at 3 & n. 4.) These calculation disputes, however, are immaterial to the court's resolution of the pending motions. Accordingly, there is no need to resolve them here.

[2] This figure is calculated on a "Last-In-Last-Out" ("LILO") basis.

[3] This figure is calculated on a "First-In-First-Out" ("FIFO") basis.

[4] There are two class periods alleged in the three complaints. One putative class period runs from January 7, 2011 – August 3, 2011. (*See* Case No. C11-1291JLR Compl. (Dkt. # 1); Case No. C11-1294 JLR Compl. (Dkt. # 1).) Another putative class period runs from April 29, 2010 – August 3, 2011. (*See* Case No. C11-1568JLR Compl. (Dkt. # 1).) At oral argument, counsel for Frankel Investor Group asserted that under the shorter class period the losses of just one married couple within the Frankel Investor Group, Charles and Cynthia Estelle, would be greater than the losses of SamCERA. First, the evidence for this calculation is not properly before the court. Second, the court agrees with counsel for SamCERA that it would be inappropriate for the court to make a determination shortening the putative class period on a motion to appoint lead plaintiff.

ORDER- 5

making is not possible, they "will allow majority rule to prevail, with three out of five votes being the majority." (*Id.* ¶ 4.) Susan Frankel and Cynthia Estelle both agree to "have one combined vote with [their] spouse in the decision-making structure of the group." (*Id.* ¶¶ 7, 10.) This raises a question regarding what happens if these two sets of spouses do not agree regarding how their votes should be cast. If the other three or four votes are split, and either one or both spousal groups cannot decide how their joint vote should be cast, then it is possible that the investor group will be unable to reach a 3-vote majority. The group has appointed Mr. Frankel as an emergency decision-maker where there is insufficient time to consult the full group (*id.* ¶ 16), but this power would not enable him to make a decision for the group in the event of the type of deadlock described above.

The Frankel Investor Group is also seeking to have two law firms appointed as co-lead counsel: Kahn Swick & Foti, LLC and Hagens Berman Sabol Shapiro LLC. (*Id.* ¶¶ 13, 18.) There is no indication that either counsel will serve in a predominate role over the other. The Frankel Investor Group's request to appoint two law firms as lead counsel also raises issues with regard to the management of the putative class action.

Pursuant to the California Government Code, SamCERA was founded in 1944 by the Board of Supervisors to provide retirement, disability, and death benefits to employees of the County of San Mateo. (David Decl. (Dkt. # 34-1) ¶ 2.) SamCERA selects its securities monitoring counsel through a formal and comprehensive selection process. (*Id.* ¶ 4.) It selected its proposed lead counsel, Bernstein Litowitz Berger & Grossman LLP ("Berstein Litowitz"), through a formal "request for proposal" process.

(*Id.* ¶¶ 6-8.) SamCERA has entered into a legal services agreement with Berstein Litowitz. (*Id.* ¶ 9.) SamCERA also seeks appointment of Keller Rohrback LLP ("Keller Rohrback") as liaison counsel.

## IV. ANALYSIS

### A. Governing Law

Under the Private Securities Litigation Reform Act ("PSLRA"), not later than 20 days after filing a class action securities complaint, a private plaintiff or plaintiffs must publish a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted, and that any member of the purported class may move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. *Id.*

Within 90 days after publication of the notice, the court shall consider any motion made by a class member to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.*

The presumptively most adequate plaintiff is the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its

attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

The presumption of adequacy may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, the court must then proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy. *Cavanaugh*, 306 F.3d at 731. If so, that plaintiff becomes the presumptive lead plaintiff and other plaintiffs must be given the opportunity to rebut that showing. *Id.*

A straightforward application of the statutory scheme "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id.* at 732. Once the court identifies the plaintiff with the largest stake in the litigation, "further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies that other statutory requirements." *Id.*

The Ninth Circuit, however, has expressly declined to decide the methodology that the district court should use in calculating each potential lead plaintiff's financial stake. *Id.* at 730, n. 4 (noting that in calculating each party's financial interest, "the court may

select accounting methods that are both rational and consistently applied[, but] . . . we need not decide the scope of the district court's discretion in determining which plaintiff has the greatest financial interest in the litigation."). The Ninth Circuit has also expressly left open the question of "whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." *Id.* at 731, n. 8.

### B.  Whether Losses of Unrelated Investors Should be Aggregated/Selection of Presumptive Lead Plaintiff

Although there is no question that a group of investors can serve as "lead plaintiff," the issue the court must resolve here is whether Frankel Investor Group can satisfy the "largest financial interest" requirement by aggregating their losses.  The PSLRA expressly states that the court shall appoint as lead plaintiff "the member or members of the purported class that the court determines to be most capable of adequately representing the interests of class members. . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B).  The statute also states that a "group of persons" can collectively serve as a lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The "group of persons" wording has created some controversy over the extent to which class members may aggregate their interests in order to form a group with the greatest financial stake. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal.1999).

Some courts have allowed aggregation of unrelated plaintiffs without imposing additional requirements. *See id.* at 1153, n. 8 (listing cases).  However, "courts that have allowed aggregation of unrelated plaintiffs have usually done so [with] little discussion." Moore's Federal Practice § 23.191[3][b][vi] (2011) (collecting cases).  "The emerging

ORDER- 9

majority position looks askance at the appointment of a group of unrelated persons as lead plaintiff." *Id.* (collecting cases).

The rationale of courts in declining to appoint a group of unrelated persons as lead plaintiff varies widely. Some courts focus primarily on the underlying purposes of the PSLRA, which is to prevent lawyer-driven litigation, and which is undermined by allowing "lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes because such a practice would allow and encourage lawyers to direct the litigation." *See, e.g.*, *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 WL 759553, at *5 (D. Idaho Feb. 24, 2011) (internal quotations omitted). Other courts have explained that one of the principal purposes of the PSLRA is to allow for institutional plaintiffs with big financial stakes and expertise in the area to serve as lead plaintiff and control the litigation. *See, e.g.*, *In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1023-27 (N.D. Cal. 1999). Other courts have found that unrelated groups of individuals, brought together solely for the purpose of aggregating their claims in an effort to become the presumptive lead plaintiff fail to meet the adequacy prong of Rule 23. *See, e.g., Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008). Irrespective of whether courts reject the formulation because it is contrary to legislative intent or because it fails under Rule 23, "the analysis and results are the same because acting contrary to the purposes of the PSLRA, which was designed to benefit class members, would also threaten the interests of the purported class." *Id.*

Nevertheless, some courts have recognized that it is possible for a group of otherwise unrelated investors to band together to represent the class where the group demonstrates that it is a small, cohesive group that is capable of directing the litigation and acting as a zealous advocate for the class. *See, e.g.*, *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10–414MJP, C10–480MJP, C10–559MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010). Indeed, even the Securities and Exchange Commission ("SEC") has agreed to the appointment of a small group of investors which ordinarily would not exceed three to five persons, "a number that will facilitate joint decision-making and also help to assure that each group member has a sufficiently large stake in the litigation." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) (citing the Memorandum of the SEC, Amicus Curiae).

The fact that a group can band together to adequately represent the class, however, does not mean that it is appropriate to aggregate their losses for purposes of surpassing the financial interests of any of the other applicants. *See Ruland v. Infosonics Corp.*, No. 06CV1231, 2006 WL 3746716, at *4 (S.D. Cal. Nov. 7, 2006) ("The tie that binds the members of each group is representation by the same lawyers[, and] [t]herefore, the Court will look at each movant individually when evaluating who should be appointed lead plaintiff."). In fact, in *Sabbagh*, the court expressly notes that its selection of a group of previously unrelated investors "is . . . bolstered by the fact that it does not appear that this group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any other applicants." *Id.* Indeed, two members of the investor group had individual losses, respectively, which exceeded the

financial interests of all other applicants. *Id.*; *see also Petrie v. Electronic Game Card, Inc.*, Nos. SACV 10-0252 DOC (RNBx), SACV 10-0258 DOC (RNBx), 2010 WL 2292288, at *2 (C.D. Cal. June 4, 2010) (appointing group of three investors where married couple in the group had the highest financial loss of all proposed lead plaintiffs); *In re Sunbeam Corp. Securities Litigation*, No. 03 CV 1721JM (POR), 2004 WL 5159061 (S.D.Cal. Jan.5, 2005) (allowing a group of unrelated investors to serve as lead plaintiff where an individual within that group had highest financial loss). Here, however, no one member of the Frankel Investor Group can claim the status of having the largest financial interest in the litigation.

Under any matrix, the court has multiple grounds for concern with regard to the Frankel Investor Group. First, the members of the Frankel Investor Group admit that they had no pre-litigation relationship and that they were introduced by counsel. This raises the specter of a group of unrelated individuals brought together by counsel solely for the purpose of aggregating losses in order to surpass the financial interests of any other applicant, and raises the concern that those in control of this litigation will in fact be the Frankel Investor Group's lawyers and not the members of the Frankel Investor Group. As the court stated in *Crawford v. Onyx Software Corporation.*, No. C01-1346L, 2002 WL 356760 (W.D. Wash. Jan. 10, 2002):

> Plaintiffs . . . aggregation of their claims in an attempt to show that they have the largest financial interest in this litigation is not convincing in light of the purposes of the PSLRA. A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult. Even though the . . . Group consists of only three

>individuals, their decision making requires either (a) levels of coordination, negotiation, and collective action which far exceed that which would be necessary of an individual litigant or (b) undue control by their lawyer-representatives.

*Id.* at *2. The PLSRA was enacted to prevent precisely this type of lawyer-driven litigation. Thus, the court concludes that the losses of the members of the Frankel Investor Group should be considered individually and not aggregated. When their losses are considered individually, there is no dispute that SamCERA has the suffered the greatest reported loss. (*See* SamCERA Mem. at 5 (chart).)

Second, even if the court were to aggregate the losses of the Frankel Investor Group, the joint declaration does not alleviate concerns regarding the group's adequacy under Rule 23. The joint declaration contains myriad conclusory statements and generalizations, such as that they are a "small, cohesive group" who "intend to work closely together and they will "communicat[e], individually or as a group, with each other and with counsel, to the extent [they] determine necessary to fairly and adequately represent the interests of the Class." (Joint Decl. (Dkt. # 36-1) ¶ 3.) These types of generalities have little or no substance and do not further the position of this otherwise unrelated group of individuals as an adequate class representative. *See, e.g., Eichholtz*, 2008 WL 395289, at * 9 ("Simply stated, this conclusory declaration [regarding the adequacy of an unrelated group investors as class representative] has little or no substance.").

Next, even if the court were to credit the group's conclusory statements concerning cohesiveness, the group's decision-making process is flawed. Although the

ORDER- 13

group includes seven members, it nevertheless operates based on majority rule as a five-member group (with the two married couples agreeing to share a vote).  A majority vote of three governs any decisions that the group cannot make by consensus.  If one or both of the married couples cannot agree on how their single vote should be cast, and if the remaining three or four votes are split, there is no provision for breaking the potential ensuing deadlock.  Lastly, the Frankel Investor Group's request to appoint multiple law firms as lead counsel raises the potential that their handling of the litigation could strip the lead plaintiff of control over the litigation, which is an occurrence the PSLRA intended to foreclose.  *See, e.g.*, *In re Jones Soda Company Sec. Litig.*, No. C07-1366RSL, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008).

It is also important to note that even if the court were to aggregate the losses of individual investors in the Frankel Investor Group, it is not clear that the Group has demonstrated that it has the largest financial interest of any qualified movant.  Although the PLSRA has not prescribed a method for measuring financial interest, courts have considered:  (i) total shares purchased, (ii) net shares purchased, (iii) net funds expended, and (iv) approximate loss.  *Schonfield v. Dendreon Corp.*, C07-800MJP, 2007 WL 2916533, at *3 (W.D. Wash. Oct. 4, 2007).  SamCERA has provided evidence that it has the greatest net shares of any individual investor or group of investors, and the greatest net expenditures, as well. (*See* SamCERA Mem. at 5 (chart).)  Given that the Frankel Investor Group is only able to assert the greatest reported loss by aggregating the losses of seven unrelated individual investors, the court cannot conclude that it has the greatest

ORDER- 14

financial interest in the outcome of the litigation. The court finds that SamCERA is the presumptive lead plaintiff based on having the greatest financial interest in the litigation.

### C. Rule 23 Factors of Adequacy and Typicality

Having found that SamCERA is the presumptive lead plaintiff, the court must also consider the adequacy and typicality requirements of Rule 23. On a motion to serve as Lead Plaintiff, "the inquiry shall focus solely on the 'typicality' and 'adequacy' aspects of" Rule 23. *In re Cavanaugh*, 306 F.3d at 730, n.5, 732.

SamCERA satisfies both requirements in this case. SamCERA's claims are typical of the claims of other putative class members. "'Typicality' in the class action context is measured by whether the applicant's claims arise from the same event or course of conduct which gave rise to the claims of the class members, and are founded on the same legal theory." *Schonfield v. Dendreon Corp.*, 2007 WL 2916533, at *4. SamCERA's claims in this action arise from the very same events and alleged course of conduct as the claims of the other putative class members—i.e., the alleged artificial inflation and consequent market correction of the price of Dendreon securities caused by Defendants' alleged fraudulent public statements and omissions. SamCERA's claims are also founded on the same legal theories as the other putative class members.

SamCERA likewise satisfies the adequacy requirement of Rule 23. "In order to satisfy the FRCP 23 conditions of 'adequacy,' it must be demonstrated that: (1) the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced and generally able to conduct the litigation." *Schonfield*, 2007 WL 2916533, at *4.

ORDER- 15

SamCERA is adequate to represent the putative class because its interests are aligned with those of the other putative class members and are not antagonistic in any way. As an investor in the publicly traded securities of Dendreon during the alleged class period, and having suffered losses upon the Company's alleged corrective disclosures, SamCERA has an identity of interest with its fellow class members. There are no facts suggesting that any actual or potential conflict of interest or other antagonism exists between SamCERA and other Class members. As discussed below, SamCERA's selection of an experienced law firm as counsel likewise demonstrates its adequacy to oversee this action as the lead plaintiff.

SamCERA is a sophisticated institutional investor, which is "exactly the type of lead plaintiff envisions by Congress when it instituted the lead plaintiff requirements." *Amour v. Network Assoc., Inc.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001) (citing *Bowman v. Legato Systems*, 195 F.R.D. 655, 657 (N.D. Cal. 2000)). Other parties have had an opportunity to respond to SamCERA's motion and rebut the adequacy of SamCERA's representation and the typicality of its claims. Although the Frankel Investor Group challenged whether SamCERA had the greatest losses in this litigation (*see* Frankel Mem. (Dkt. # 35) at 10), no party has challenged the adequacy of SamCERA or the typicality of its claims under Rule 23. Accordingly, the court appoints SamCERA as the lead plaintiff.

### D. Approval of Lead Counsel

Once the court has designated a lead plaintiff, the plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–

1  4(a)(3)(B)(v). The declaration submitted regarding SamCERA's choice as lead counsel
2  indicates that Bernstein Litowitz has litigated numerous complex securities cases, as well
3  as a variety of other complex class actions. (*See* Nicholas Decl. (Dkt. # 14) Ex. G.) The
4  same is true regarding Keller Rohrback, SamCERA's choice for liaison counsel. (*See id.*
5  Ex. H.) No objections have been interposed concerning either law firm's qualifications
6  to serve in either capacity. Accordingly, the court should appoint Bernstein Litowitz as
7  lead counsel in this consolidated matter, and Keller Rohrback as liaison counsel in accord
8  with SamCERA's request.

## V. CONCLUSION

10  Pursuant to the forgoing, the court GRANTS SamCERA's motion for appointment
11  of lead plaintiff and counsel (Dkt. # 13), and DENIES the Frankel Investor Groups's
12  motion for appointment of lead plaintiff and counsel (Dkt. # 18). The court hereby
13  appoints SamCERA as lead plaintiff in this consolidated action, Bernstein Litowitz as
14  lead plaintiff's lead counsel, and Keller Rohrback as lead plaintiff's liaison counsel. The
15  court further orders the parties to meet and confer and file a joint status report no later
16  than Monday, January 9, 2012, which sets forth the parties' proposed schedule for the

1 filing of a consolidated amended complaint, as well as responses thereto.  (*See* Order

2 (Dkt. # 42).)

3       Dated this 19th day of December, 2011.

                                        JAMES L. ROBART
                                      United States District Judge

ORDER- 18